Case number 22-1922 from Eastern Arkansas, Stacey Johnson v. Leslie Rutledge, et al. Good morning, Your Honor, and may it please the Court, Dylan Jacobs, Deputy Solicitor General for the State of Arkansas, here on behalf of the appellants. Stacey Johnson was convicted of a brutal murder. Two juries sentenced him to death, and he has spent the intervening years filing numerous fruitless legal challenges to his conviction and his sentence. This suit is his latest one. Act 1780 allows prisoners to file a habeas corpus petition seeking relief from their conviction or sentence on the basis of new scientific evidence. As a part of those proceedings, circuit courts may order further DNA testing if several procedural requirements are met, requirements that are common to all or nearly all state post-conviction DNA testing regimes, as well as the federal corollary. Stacey Johnson brought a habeas petition under Act 1780. He sought DNA testing in the state courts, determined that he was not entitled to any further testing. Johnson now challenges Act 1780, and this appeal concerns whether the federal courts have jurisdiction to hear his challenge. The Supreme Court held in Osborne that states are not required to allow any post-conviction DNA testing for convicted prisoners, but if a state affords prisoners that opportunity, they have to comply with procedural due process requirements. Johnson's only remaining claim in this case is that the Arkansas courts have interpreted Act 1780 in such a way as to violate his procedural due process rights and close him off from the judicial remedy created by Act 1780. There are two problems with this lawsuit. The first is that the defendants that he sued do not enforce the Act and are thus not proper defendants for either standing or limit the minimum immunity purposes. And the second issue is that the relief that he seeks would not redress the procedural injury that he alleges. I'll start with the officials that he sued. They don't have an enforcement role with Act 1780, which provides a sole judicial remedy for post-conviction DNA testing. What about the ability, and this happened in the Echols case, the ability for the AG or the prosecuting authority to reach an agreement or stipulation to release the evidence? So I think that as a general matter is true any time that an attorney general or other state attorney is representing the state or a state agency in the course of a defensive posture in litigation, and it would be very odd to say in digital recognition network, for example, that the ability to intervene in these suits concerning the constitutionality, which may result in some sort of stipulation or admission that a statute is unconstitutional or can't be enforced, isn't enough. But yet, simply being hauled into court and having the ability to make litigation decisions like that is enforcement authority for really the purposes of any statute that an AG or another state attorney might be available. I think it's less about, at least at this stage, for me, the enforcement authority and more about the fact that the state holds the evidence, that the AG or the crime lab or whoever controls the evidence, and that if the state AG says, you know what, we're going to reach an agreement with defense counsel that we're going to release it, I don't see what would stand in the way of that. Can they not do that? So I'll unpack that a little bit. So I think that the court ought to distinguish among the three defendants, at least the attorney general, for the reason that the complaint does not allege that the attorney general has possession, access, or control to this evidence the way that the complaint alleges that the prosecuting attorney and the crime lab do. So even if the court agrees with what I think is Johnson's overarching theory about this for standing and ex parte young purposes, that only applies to those two defendants. And getting on to this ability to agree to the testing. So I think as a general matter, yes, the prosecuting attorney and the attorney general are able to make, as they can in every sort of case, stipulations, agree to certain legal positions. However, under the act, the circuit court still has the ultimate authority to decide whether to order testing. And so it could be the case that even if the attorney general makes factual stipulations or agrees with a challenging prisoner's legal position, the circuit court is still of the mind that no, he doesn't meet the requirements of the statute, I'm going to deny testing. There's nothing that the attorney general or the prosecuting attorney can do to force the circuit court to order testing. And that way, the prosecuting attorney and the attorney general are sort of in the same position as a challenging prisoner, being at the mercy of the court's decision about whether Act 1780 will be enforced in this case. So there's no ability to test. There can't be an agreement. It sounds to me like you're saying there couldn't be an agreement between the defendant and the prosecuting authority to test. They can't release the evidence and say, yes, this can be tested. It has to go through the judicial system. So I think if there is such an agreement, it's not made pursuant to Act 1780. There may be some sort of general common law ability of a prosecuting attorney as part of its investigative authority to do this testing after a conviction, just as it can before. But to the extent that prosecutors have that authority, it doesn't flow from Act 1780 and doesn't support an ex parte young defense to challenging that statute. But here's the problem I'm having. And this is why this is such a difficult case. The problem is the AG and the prosecuting authority, or whoever the defendants are, are using the circuit court decision as a shield, saying we're not going to release the evidence because of Act 1780, because a determination has been made. And so I'm trying to figure this out. If we were to say that there wasn't procedural due process under the 1780 procedure, the AG would lose the ability to use the circuit court decision as a shield, wouldn't they? Well, I don't think that if you imagine that Act 1780 just doesn't exist. So prior to the petitions being filed, there hasn't been some sort of informal request prior to these proceedings to which the responses will go to the court. That never happened here. And given the responsibility of the AG and the prosecutor to secure finality and convictions, I can't imagine a situation where that would be the usual case. Since Abt in Act 1780, a prisoner comes to the prosecuting attorney asking for DNA testing, they may decide to give it to him. But it doesn't have anything to do with this court proceeding that creates a process by which a court can make these decisions. I'm just going to ask one last question. I'm going to come at it differently. Suppose the district court, it's an incredibly weak claim on the merits, but suppose the district court comes back and says it violates due process. Would the attorney general and the prosecutor in the crime lab turn over the evidence? I'm assuming it's a declaratory judgment? Yes. So no. And I think the court recognizes that that's why declaratory judgments aren't usually appropriate remedies for redressability purposes. Understanding it said this in Digital Recognition Network, because the state courts aren't bound by declaratory judgments of lower federal courts. And so Act 1780 requires the state, because the state is the respondent, not any of these particular officials. Act 1780 requires the state to conduct this testing when ordered by a court. And so certainly Johnson could go back to the state court and say, I've got this declaratory judgment that says these procedures violate federal due process. And the state attorneys would obviously agree that that's what the federal court says. But application of the statute is left to the state courts. And to the extent that they're subject to federal court's authority enforcing the procedural due process requirements, that's for the United States Supreme Court on direct review, or in some other precedential case. So if, Mr., you're saying that your clients, none of them are the proper defendants, and yet you acknowledge in Osborne there is, if a state does have a procedure, it has to comport with due process. So who, in your view, does Stacey Johnson sue with this claim? Your Honor, I don't think, so I don't think there is any executive official in the state of Arkansas who's amenable to suit under Ex Parte Young for a challenge to the statute. Stacey Johnson has a remedy for this, and that's certiorari to the United States Supreme Court, which he unsuccessfully sought. So I think he's had all of the process that he's entitled to under. But if you put together Osborne and Schooner, Schooner says this is appropriate for a Section 1983 claim, you're saying Stacey Johnson doesn't have one. That's correct, I think. And I think it's important to note that neither in Osborne nor Schooner did the court address either standing or sovereign immunity. It addressed other jurisdictional issues, but it wasn't presented with the question. And so the Supreme Court has said— Right, right. But I think, I mean, you're asking us to sort of assume that the Supreme Court was just absolutely wrong and that every court sent—I mean, it's a big ask, I think. I mean, I get your point. I understand what you're saying. But if we take the Supreme Court cases as we have them, where no one questioned the issues that you're raising now—fair enough, you're raising them—but the combination of Osborne and Schooner, I'm just trying to figure out if you just take those on their face, what does Stacey Johnson do in your view? I understand it's not your clients, but how does he raise this claim in Section 1983? I think as to Arkansas, there may just simply not be a way outside of direct review to the U.S. Supreme Court. Now, in other states and in other systems that are set up, there very well may be an executive official who is ultimately responsible for the enforcement of that. It just doesn't happen to be the case under the act that the Arkansas General Assembly passed. And if I could— Let me ask you— Can I just have a—oh, I'm sorry. No, please do, Judge Kelly. Go ahead. Just a follow-up question. In a 1780 Act case, the AG, the prosecuting attorney, is a party and is mandated, required to respond to a petition or a motion like Stacey Johnson filed. And presumably, they are sort of relying on the Act and the requirements in order to, you know, push back, no, no. Why is it that—this is where sort of standing and 11th immunity kind of bleed together, but why isn't that enough of, you know, small e-enforcement in connection to the statute to make this a viable claim for Johnson, at least as two parties? So, I don't think that it's any different than attorneys general generally having a responsibility to intervene to defend state law. And I think it's actually even less— Can I interrupt here? This isn't an intervention. This is you are actually directed to respond. It's not sort of coming in like digital recognition. So, if you can kind of stay on that line for me. Sure. And I think it's even less so than the intervention for the reason that an Act 1780 petition ultimately is seeking the relief of getting a new trial or resentencing. And so, when the prosecuting attorney and the attorney general are coming in to respond, you know, they're doing it under a duty to defend the finality of convictions and the finality of sentencing. And the procedure for getting a DNA testing is, I think, ultimately a discovery tool that is part of the statutory framework. And so, I don't think that the AG or the prosecuting attorney are really in any different position than a litigant before a court generally where discovery procedures are at issue. And as to the discovery procedure itself, litigants make arguments about those all the time, but we're all ultimately at the mercy of the court in terms of the rulings on that. And the AG follows whatever ruling to the circuit court issues. Let me ask you about Reed versus Gertz. The other side raised it, I think, in their brief. That's the case that's up at the Supreme Court. It's a DNA testing case. It deals actually, the question presented is regarding the statute of limitations. But the parties briefed both jurisdictional issues that you raised here. They briefed who's the appropriate defendant. They briefed, you know, for Ex parte Young, they briefed standing as well. So why shouldn't we, since it's a jurisdictional question, the court will almost certainly have to deal with it or dismiss it as improperly granted. Why shouldn't we just stay this case for Reed versus Gertz? I think the court probably ought to just hold it in abeyance until there. I'd be surprised if they don't address it, and I think it probably would waste time if it turns out differently than this court would otherwise decide. I think that's right, Your Honor. So if I could, I'd reserve the remainder of my time for rebuttal. If there are no further questions, you may. Thank you, Your Honor. Mr. Blakely. Your Honors, may it please the court, Kaiser Blakely for Mr. Johnson. This court should affirm the district court's jurisdictional ruling for two reasons. First, Johnson is Article III standing. He has suffered an injury, and he has met his relatively modest burden of showing causation and redressability at the pleading stage. Second, Johnson can sue under Ex parte Young. He seeks prospective equitable relief for an ongoing constitutional violation, and he has shown that the defendants have some connection with the enforcement of Arkansas' DNA testing law. And I'll start where Judge Strauss left off, and that is Reed versus Gertz. It's worth noting that the Supreme Court during oral argument was not concerned with jurisdiction. In fact, the only major colloquy was between Justice Jackson and the litigant for the state, Texas, arguing about the practical problems with their jurisdictional arguments, and that goes to Judge Kelly's question about who is Johnson to sue. But don't you agree with the other side that they're probably going to have to address it at least at some point, maybe in a footnote, and that will go a long way towards telling us what to do here? It certainly, Your Honor, the court could do that. But the thing is Johnson needs access to evidence soon. He didn't want the state to take this interlocutory appeal. He wants to fight the merits on this case below so he can have his death sentence set aside. He wants access to evidence. And so I understand it might be more efficient for this court to wait, but Johnson does want this process to move quickly. Does he face an imminent execution date? Has the date been set? No, Your Honor, and that actually goes to the merits of his argument. The Arkansas Supreme Court could have allowed his execution to go forward and said this request for DNA testing is meritless. They didn't do that. They set aside his execution date because they know the value of DNA testing. His claim is not meritless. He's raised a probable theory of defense, and so we want to see this played out. And so that addresses the Reed v. Gertz arguments. The fact the Supreme Court is not concerned about the jurisdictional arguments just shows that Johnson is likely to win on appeal here. I'm very nervous about that argument because I could recite a lot of instances where they're not very interested in it, and the opinion comes out five months later and it talks all about the jurisdictional argument. So oral argument is not always the best barometer of how cases are going to come out. That's true, Your Honor, but it also is worth noting that Texas put their jurisdictional arguments, which normally come first, last in their briefing. They don't even think that their arguments are really all that strong on the merits. But moving to this case, my friend also talked about the ability to stipulate to the conditions being satisfied or the ability to agree to DNA testing. That's important, and it's important also because the state argues at page 10 of its opening brief, Act 1780 is, quote, substantially identical to the federal DNA testing law. Why is that relevant? Because the federal guidelines, which date back to 1999, they've been around for a while, pages 5 through 6 outline the procedures of prosecuting attorneys, the individuals who have control over the evidence. And it says the best bet is to agree with the defendants. That way courts don't even need to get involved. And so the fact that under the guidelines, the DOJ guidelines, that prosecuting attorneys have that ability to agree or stipulate to DNA testing shows that Arkansas state officials likely do, too. And it doesn't matter if that ability is rooted in the common law or Act 1780. We know that because of Ex Parte Young and Whole Woman's Health v. Jackson. But that's the weird part about this case is it's really, you may be right about the ability, and I asked opposing counsel about that, but it has nothing to do with the Act. The Act is about going to the circuit court. And so what do you do when you're – should you have brought a procedural due process claim against the AG and the prosecuting attorneys aside from the Act, saying you should give us due process and you didn't meet with us and you didn't enter settlement negotiations in order to give us the DNA testing? It's just weird because there's no connection to the Act if we go that route. That also would be weird. And so I think it's a better strategic decision for prisoners like Johnson and everyone else to follow what the Supreme Court said in Osborne and Skinner, and that is take it against the prosecuting attorney. The state, when they give you a right to DNA testing, they can impose conditions on it. They just have to be fundamentally fair. And Skinner says you can challenge those on procedural due process grounds under Section 1983. That's the exact claim Johnson brings here. And that's, again, just another reason to wait for Reed v. Gertz because the court's going to address these issues. What about the argument that I posed to opposing counsel? Let's say we remand this, say the case can go forward. The district court then says, yes, it violates procedural due process. The other side says you still don't get the evidence. You still have to go back to the circuit court and show the circuit court what's going on. Is that a problem for your case from a causation perspective? No, two reasons. First, the potential for a defendant to in the future violate someone else's rights doesn't affect the standing or ex parte Young analysis now. The second reason is here Johnson has alleged that he has met all of the other requirements under Act 1780. Therefore, a declaratory order or an injunction will strip away the justification for him currently being denied access to testing. Right now, he alleges he's being denied access to testing due to his inability to satisfy only the fundamentally unfair requirement read into Act 1780. With that gone, he's entitled to testing. Sure, the state may continue to deprive him of his rights. But that would then lead to another lawsuit. But that doesn't affect the standing or jurisdictional analysis here. And that's the fundamental problem with their entire argument. Also, it's just worth noting we are at the motion to dismiss stage. The burden is relatively modest both for Article III standing and for ex parte Young. That's at page 535 of Whole Woman's Health v. Jackson where Justice Gorsuch, writing for the court, talks about how ex parte Young is satisfied at this stage. So it is a relatively modest burden. Lastly, Judge Kelly mentioned an Attorney General specific argument. And I want to respond to that in two points. First, Johnson doesn't have a vendetta against the Attorney General. He doesn't care who he gets the evidence from. He just wants access to evidence. And so the prosecuting attorney is the correct defendant in this case. The allegations against him are the same allegations that prisoners make across the entire country. So at the end of the day, it doesn't matter if the AG is still in this lawsuit as long as the prosecuting attorney is. But the AG is correctly in this lawsuit. As this court noted in 281 Care Community, there the Attorney General was the proper defendant for three reasons. First, they had the ability to get involved in the criminal prosecution of the challenge law, and that ability was specified in the law itself. Second, they had a duty to defend the court administrative decisions issued pursuant to the challenge law. Again, that ability came from the act itself. Third, the Attorney General had the general authority to initiate civil actions under the challenge law, and again, that ability came from the challenge law itself. That differentiates this case from Digital Recognition Network, where the Attorney General's authority was some general authority hidden away, not specific to the law at issue. Here, Act 1780, like the state law in 281 Care Community, specifically identifies both the prosecuting attorney and the Attorney General as having an implementation role in Arkansas' DNA testing law. That fact is enough to loop in the Attorney General, combined with the fact that Johnson alleges the Attorney General, along with the other two defendants, are denying him testing due to his inability to satisfy Act 1780 as construed. So it's those two allegations together that make the Attorney General a proper defendant. So in your view, the mere fact that the statute makes the Attorney General a respondent is enough to bring them in for a Section 1983 suit. Full stop. I think the fact that—well, not necessarily, Your Honor, because the fact that the Attorney General has a duty to respond to the motion doesn't mean necessarily he's just a defendant. It also carries with it that common law power that my friend says exists, and the federal guidelines say exists, to work with the plaintiff, stipulate to the conditions, agree to testing if you think it's there. If not, fight the case, and then you're the defendant. But it just recognizes you have a role in this process, and that's why it's the proper defendant here. So ultimately, all of the defendants are the proper defendants. Johnson has Article III standing. The state doesn't contest the injury. He has met his relatively modest burden of showing causation and redressability at the pleading stage, and he has also shown that he can sue under Ex Parte Young for those same reasons. So unless the Court has any further questions— Let me just ask you, why is the state crime lab included? Is it because—I mean, they're not a respondent. Is it because they hold the evidence and you just wanted to be really complete in who you sued? Yes, absolutely, Your Honor. I mean, Johnson has alleged that the crime lab director also has control over the evidence. That allegation is plausible. The state hasn't suggested otherwise. Therefore, it must be taken as true, so it's sufficient at this stage. Your Honors, the Court should affirm the District Court below. Thank you. Thank you. You have a minute and 47, Mr. Jacobs. Thank you, Your Honor. If I could quickly clear up a few points. So my friend mentioned 281 Care and the decision there with this sort of mix of authority of the state AG being enough for standing. I think this Court in Digital Recognition Network cabined both 281 Care and the Court's 2006 decision in Bruning that was similar to the specific facts where the attorney generals in those cases had actual civil or criminal enforcement authority. And they may have had additional reasons that may have been relevant, but it was really those reasons, the Court said in Digital Recognition Network, that mattered, the things that lack here. On this question of the source of authority, my friend mentioned the decision of Whole Woman's Health where there's this statement that, well, it doesn't matter the source of enforcement authority for purposes of Ex Parte Young. That's true that the source doesn't matter, but what the Court was saying there is so long as there is enforcement authority, it doesn't matter if it's from the statute you're challenging or if some other statute gives the enforcement authority for that statute. It doesn't matter. Here the problem is that the enforcement authority that they're alleging doesn't come from anywhere. So there is no statute, either Act 1780 or otherwise, that gives enforcement authority to any of these officials. If I could raise one final point that I didn't get to. Aside from the defendants, we think that the injury and the relief that's asserted is also improper as to the injunctive relief in addition to the declaratory relief. Because what he's asking for is really an injunction to sidestep due process entirely and get the DNA testing that is the subject of this case. The usual remedy in a procedural due process challenge is due process. What he asks for here is not that. And so we think that's a redressability point that's fatal to his case. If there are no further questions. I hate to ask this, but I was intrigued by your last point, which is he's asking for no due process. I think he's just asking for due process in a different form. He's asking for the federal district court to give him the due process. I mean, that's why I said I think that the underlying merits are pretty weak because he did get due process through the Act. But, I mean, am I misinterpreting your response here? So I think the due process argument is that he suffered a procedural injury in the state court by being deprived of this testing. And so the proper remedy, assuming one could be ordered, would be for a redo in state court under proper procedures. Because what he says is the injury is that the Supreme Court has grafted on what he described as an extra textual requirement to Act 1780, ratcheting the bar so high that no prisoner can meet it. And his theory is that, well, if you ratchet the bar down appropriately, constitutionally, I would meet it. Well, the remedy in that is to give him the chance to do it, not to simply give him the testing that he wants as the ultimate result. Thank you, Your Honors. Thank you. I appreciate the arguments in the briefing. The case has been submitted. The clerk will call the next case.